IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **ESAU TORRES MENDOZA and all others similarly situated under 29 U.S.C. 216(B),** § § § § | |
| **Plaintiff,** § | |
| § | Civil Action No. 3:10-CV-02436-G (BD) |
| vs. § | |
| **DETAIL SOLUTIONS, LLC f/k/a UPTOWN DETAIL AND SPA and CAROLE AUSTEIN, INDEPENDENT EXECUTRIX OF THE ESTATE OF CHARLES AUSTEIN** § § § § § § § | |
| **Defendants.** § | |

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT
DETAIL SOLUTIONS, LLC'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Esau Torres Mendoza ("Plaintiff" or "Mendoza") files this Brief in Support of Plaintiff's Response to the Motion for Summary Judgment (D.E. 74) ("DMSJ"), Brief in Support (D.E. 75) ("DBS") and Appendix in Support (D.E. 76) ("Def. App.") (collectively, the "MSJ"), filed by Detail Solutions, LLC f/k/a Uptown Detail and Spa ("Defendant" or "DSUDS") and would show the Court as follows:

**I.    Introduction**

1. On December 1, 2010 Plaintiff filed his Complaint alleging violations of the Fair Labor Standards Act ("FLSA") under 29 U.S.C. 201-216 and retaliation under 29 U.S.C. 215(A)(3) (D.E. 1).  On June 20, 2012 DSUDS filed the MSJ.

2. The basis of the MSJ is twofold:

    i. The FLSA does not apply because DSUDS and Plaintiff did not engage in interstate commerce; and

    ii. Plaintiff is undocumented and therefore cannot recover back wages.

3. Under Federal Rule of Civil Procedure 56, Defendant is not entitled to summary judgment on either basis as either genuine issues of material fact exist with regard to the elements necessary to establish the defenses raised by Defendants or the law is not settled.

## II. Objections to Defendants' Motion

4. Plaintiff objects to Defendant's MSJ in its entirety as it is improperly styled. The MSJ at best could only provide partial relief and should be styled a Motion for Partial Summary Judgment as even in the event that the Court granted DSUDS' Motion on all of the grounds raised a part of the retaliation claim would survive.[1]

5. Plaintiff objects to all assertions of purported fact included in the MSJ that touch on any of the discovery requested from DSUDS on January 31, 2012[2] as DSUDS has not objected or responded to the requests including Requests for Admissions, which Plaintiff moves the Court to deem as admitted. Further as Defendant has failed to engage in discovery as required, prior to filing the MSJ, Plaintiff moves the Court to

---

[1] "To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [her] protest;' however, the plaintiff must have a good faith belief that the discrimination existed." *Holifield v. Reno*, 115 F.3d 115 F.3d 1555, 1566 (11th Cir. 1997), *quoting Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989). *See, Wirtz v. Ross Packaging Company*, 367 F.2d 549, 550-51 (5th Cir. 1966)(It is not necessary that the employee "be engaged in activities covered by the Act's wage and hour provisions in order for the strictures against discriminatory discharge to be invoked."). *See also, Sapperstein v. Hager*, 188 F.3d 852 (7th Cir. 1999)(Section 215(a)(3) discharge action can still be maintained by an employee notwithstanding that the employer is not covered by the FLSA wage and hour provisions). In the instant case, there is no justification to allege that Plaintiff filed his action in bad faith doubting the validity of his claim. Therefore, even if the Court found no FLSA coverage (i.e. subject matter jurisdiction), the retaliation count would still survive, and even if the remedy of back pay were to be denied, other remedies for retaliation survive, that are not addressed in the MSJ. *See Singh v. Jutla*, 214 F. Supp. 2d 1056, 1060 (N.D. Cal. 2002).

[2] *See* Plaintiffs' Appendix to Brief in Support of Plaintiff's Response to Defendants' Motion For Summary Judgment filed with this Brief ("App.") at pp. 22-34.

**BRIEF IN SUPPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**                       **PAGE 2**

deny the MSJ on that basis as well.

### III.  Summary Judgment Evidence in Opposition to Defendants' Motion

6.  In support of his response, Plaintiff relies upon admissions made in the MSJ and evidence contained the Appendix that is part of that MSJ, which require that it be denied and in further support, includes the following evidence in the attached appendix ("App."), that shows that there are genuine issues of material fact with regard to the Plaintiffs' claims such that the MSJ should be denied.

   a.  <u>Deposition excerpts.</u> Excerpts from the depositions of Jeana Delay ("Delay Depo.") and Esau Torres Mendoza ("Mendoza Depo.").

   b.  <u>Affidavits.</u> The affidavit of Esau Torres Mendoza ("Mendoza Aff.").

   c.  <u>Internet search results.</u>  Documents reflecting the sites of manufacture for Audi, Nissan and Volvo vehicles ("Internet Docs")

   d.  <u>Discovery</u> Unanswered Discovery served on Defendant and associated correspondence ("Discovery to Def.")

### IV.  Statement of Facts

7.  The evidence establishes that the MSJ should be denied.  In the first instance Defendant's own evidence establishes that DSUDS employed Mendoza,[3] that DSUDS

---

[3] Delay Declaration Def. App. 2.

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT
DETAIL SOLUTIONS, LLC'S MOTION FOR SUMMARY JUDGMENT     PAGE 3**

grossed $498,602.46 in 2009 and $500,000.00 in 2010.[4]

8. Mendoza believes and testified that he started work for DSUDS in October of 2009.[5]

9. DSUDS suppliers include L&D Distributors, Aramark and Hotsy Equipment.[6]

10. DSUDS started in May of 2009.[7]

11. In 2009 and 2010 more than two employees DSUDS used uniforms and towels supplied by Aramark.[8]

12. As a condition of employment with Detail Solutions, Mendoza and the other employees of Detail Solutions had to purchase and wear uniforms sold by Aramark.[9] The labels in Mendoza's uniform reflect that the uniform was made in Honduras.[10]

13. During his employment with Detail Solutions Mendoza had to use towels provided by Aramark as well.[11]

14. During his employment with Detail Solutions Mendoza and at least two other

---

[4] *Id.*

[5] Mendoza Depo. p. 14.21-25, Def. App. p. 5; App. p. 3.

[6] Delay Depo p. 45.20-24, Def. App. p. 7; App. p. 4.

[7] Delay Depo. p.13.17-18, App. p. 5.

[8] Delay Depo. pp. 41.13 – 42. 2, App. pp. 6-7.

[9] Mendoza Aff. para. 2, p. 1, App. p.8.

[10] *Id.*

[11] Mendoza Aff. para. 3, p. 2 App. 9.

**BRIEF IN SUPPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT                                                          PAGE 4**

employees of Detail Solutions detailed and prepared new vehicles for sale.[12] The new vehicles included those manufactured by Audi, Nissan, Volvo, Toyota, GMC and Suzuki.[13] Many of these new vehicles, particularly the Audi and Nissan vehicles, were manufactured outside the State of Texas. [14]

15. During his employment with Detail Solutions Mendoza and at least two other employees of Detail Solutions, wore uniforms and used soap, degreaser, brushes, tire washing fluid, towels, cleansers, window cleaner and power cleaning equipment.[15] Some of the suppliers of these materials are L & D Distributors, Aramark, Hotsy Equipment and Dealer Industries Automotive Supply.[16] Some of these items, particularly the uniforms, were made outside the State of Texas.[17]

## V. Legal Standards and Argument Against Summary Judgment

### A. Fed. R. Civ. P. 56.

16. Although summary judgment is proper in a case in which there is no genuine dispute of material fact, this is not a case in which the Court should grant summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

17. A defendant moving for summary judgment on a plaintiff's claim must demonstrate the

---

[12] Mendoza Aff. para. 4, p. 2, App. p.9.

[13] *Id.*

[14] *Id.; See* Internet Docs regarding sites where Volvo, Audi and Nissan vehicles are made, App. pp. 12-21.

[15] Mendoza Aff. para. 5, p. 2, App. 9.

[16] *Id.*

[17] *Id.*

absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); *see Celotex Corp.*, 477 U.S. at 322-23. Defendant cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of his claim. Rather, defendant must demonstrate the absence of a genuine factual dispute. *See Celotex Corp.*, 477 U.S. at 324-25. Only if defendants meet their burden is plaintiff required to respond by summary-judgment proof to show a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(e) (3).

18. "For the purposes of summary judgment determination, all fact questions are viewed in a light most favorable to the non-movant." *Aucoin v. Haney*, 306 F.3d 268, 271 (5th Cir. 2002). The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1992).

   B.   **Plaintiff Qualifies for Individual Coverage under the FLSA**

19. Plaintiff was not engaged in cleaning cars as part of a local "carwash" but was involved in the preparation and detailing of new cars, that had moved through interstate commerce for dealerships so that they could sell them to first time buyers in Texas. This "dealer prep" is an integral part of the sale of new vehicles and must be performed before delivery to the customer. Consequently Plaintiff was "actually in or so closely related to the movement of the commerce as to be a part of it," under the test cited by

Defendant in the MSJ and Plaintiff qualifies for individual coverage under the FLSA.

### C.     Defendant is Subject to Enterprise Liability Under 29 U.S.C. § 203 (s) (1)

20. DSUDS meets the $500.000.00 threshold for annual gross volume of sales or business done. *See* 29 U.S.C. § 203 (s) (1). DSUDS admits this for 2010 and by implication for every quarter of that year. DSUDS also admits that is grossed over $498.000.00 in the eight months it was in existence in 2009, for an average of over $62,000.00 per month. DSUDS therefore meets the test for the twelve months from May 2009 to May 2010 and further in as much as the threshold was met in 2010 – DSUDS meets test for the 12 months from October 2009 to October 2010. *See* 29 CFR 779.269 concerning "Computations for a new business" (also known as the rolling quarter method). [18]

21. The evidence also establishes that two or more of DSUDS' employees regularly and recurrently handled or worked on new automobiles made outside the State of Texas and handled, i.e. had to wear, uniforms made in Honduras.[19] These facts and the gross receipts establish enterprise coverage. *See* Polycarpe et al. v. E & S Landscaping, 616 F.3d 1217 (11th Cir. 2010); See also Brennan v. Greene's Propane Gas Service, Inc. et al., 479 F.2d 1027, 1031 (5th Cir. 1973), citing Wirtz v. Melos Construction Corp, 408 F.2d 626, 629 (2nd Cir. 1969): "It is immaterial … that the goods may have 'come to

---

[18] The admissions that DSUDS did not respond to if deemed also establish this. *See* App.  pp. 27-78 and pp.  22-24 establishing that the admissions were served by letter dated  January 312, 2012 and Mr. Callister's letter of February 8, 20112  which indicates  that he received that letter.  App. pp. 33-34.

[19] S*ee* Delay Depo. pp. 41.13 – 42. 22, App. pp. 6-7; Mendoza Aff. para. 2, p. 1, App.  p.8; Mendoza Aff. para. 3, p. 2, App. 9.; Mendoza Aff. para. 4, p. 2, App. p.9; Internet Docs regarding sites where Volvo, Audi and Nissan vehicles are made, App. pp. 12-21;  Mendoza Aff. para. 5, p. 2, App. 9.

rest' … before they are handled, sold or otherwise worked on by the employees in the enterprise." Thus the "commerce" prong under enterprise coverage is met when the goods are handled by the employees by virtue of the fact that the goods merely "moved across State lines at any time in the course of business, such as from the manufacturer to the distributor." *Id.*

D. **Plaintiff's Immigration Status does not Necessarily Bar His Right to Recover Back Wages for Retaliation under the FLSA, and does not Bar Other Remedies for Retaliation**

22. In support of its MSJ on the issue of back pay, DSUDS cites *Hoffman Plastic Compounds, Inc. v. NLRB,* 535 U.S. 137, 147, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002) for the proposition that undocumented workers are not able to recover damages for back wages in a case such as this one, brought under the FLSA. While the majority of courts have determined that to be the case, no court in the Northern District of Texas has so held and neither has the Fifth Circuit Court of Appeals. Moreover, some courts have taken the position that the Hoffman decision is constrained to the specific facts of that case and in the context of the NLRB when addressing the issue of backpay damages. Notably, the Ninth Circuit has determined that illegal aliens in a Title VII case (which is held in pari passu with the FLSA)[20] could be awarded backpay. *Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1068-1069 (9th Cir. 2004).

---

[20] We regard Title VII, ADEA, ERISA, and FLSA as standing in pari passu and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another. See, e.g., Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 60 L. Ed. 2d 609, 99 S. Ct. 2066 (1979); Lorillard v. Pons, 434 U.S. 575, 584, 55 L. Ed. 2d 40, 98 S. Ct. 866 (1978); Wheeler v. Hurdman, 825 F.2d 257, 263 (10th Cir. 1987); Hyland v. New Haven Radiology Assocs., 794 F.2d 793, 796 (2d Cir. 1986); Serapion v. Martinez, 119 F.3d 982, 985 (1st Cir. P.R. 1997).

**BRIEF IN SUPPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT                                                    PAGE 8**

23. The long standing precedent in the Fifth Circuit is that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant. An employee is "any individual employed by an employer." FLSA, 29 U.S.C. § 203(e)(1). *In re Margarito Reyes*, 814 F.2d 168, 170 (5th Cir. 1987).  Moreover, in *Bollinger Shipyards Inc. v. Dir., OCWP*, 604 F.3d 864 (5th Cir. 2010) the court distinguished *Hoffman* and discretionary awards under the NLRA from an award of benefits to undocumented works under the Longshore and Harbor Workers Compensation Act as it is a non-discretionary statutory remedy.  The FLSA too provides statutory mandated remedies.  *See Jin-Ming Lin v. Chinatown Rest. Corp.*, 771 F. Supp. 2d 185 (D. Mass. 2011) (Court found that an employee's immigration status was irrelevant because unlike NLRA where the award of damages is discretionary, award of damages under the FLSA was mandatory and as such was distinguishable from *Hoffman*).  Under the reasoning of the Jin-Ming Court and the Bollinger Court, should Plaintiff establish a right to damages under the FLSA, even back pay damages for retaliation would be proper.[21]

---

[21] Although it did not address the issue of backpay damages, the reasoning of the court in Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 322-323 (D.N.J. 2005) is instructive. The Court found that illegal aliens were entitled to all remedies under the FLSA perhaps because the statute was meant to protect employees like illegal aliens as stated by the Court: "The "prime purpose of the [FLSA] was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum substance wage." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 n.18, 89 L. Ed. 1296, 65 S. Ct. 895 (1945)." Id at 320-321. Furthermore, affording illegal aliens the same rights coincides with the purpose behind IRCA as it discourages employers from hiring illegal aliens. As the Court explained in Zavala quoting from Patel decision, "We doubt, however, that many illegal aliens come to this country to gain the protection of our labor laws. Rather it is the hope of getting a job -- at any wage -- that prompts most illegal aliens to cross our borders." Id at 323.  The Court went on to explain that there is less of an incentive to hire illegal aliens if they are afforded the same protections of the FLSA, thereby furthering the purpose behind IRCA.  If there are no remedies available to illegal aliens who are retaliated against when brining their FLSA lawsuits, illegal aliens will be discouraged from coming forward with their claims and as a result employers will be encouraged to hire illegal aliens. Said position would not coincide with the purpose of IRCA or the FLSA.

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT
DETAIL SOLUTIONS, LLC'S MOTION FOR SUMMARY JUDGMENT    PAGE 9**

24. Finally, Defendant has not moved for summary judgment as to any remedy for retaliation except back pay and Plaintiffs claims as to other available remedies remain unchallenged and intact. *See Singh v. Jutla,* 214 F. Supp. 2d 1056, 1060 (N.D. Cal. 2002).

### VI.  Conclusion & Prayer

For these reasons, as set out hereinabove, Plaintiff respectfully requests that the court deny Defendant's Motion for Summary Judgment in its entirety and grant Plaintiff all such other relief that the Court deems just.

Respectfully submitted,

By:  /s/ Robert L. Manteuffel
Robert L. Manteuffel
Texas Bar No. 12957529
J.H. Zidell, P.C.
6310 LBJ Freeway, Ste. 112
Dallas, Texas 75240
Tel:   972-233-2264
Fax:   972-386-7610
E-mail address: rlmanteuffel@sbcglobal.net

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel and parties of record by electronic service in accordance with the local rules of United States District Court for the Northern District of Texas, Dallas Division this 10th day of July, 2012.

/s/ Robert L. Manteuffel
Robert L. Manteuffel
Counsel for the Plaintiff