UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ESAU TORRES MENDOZA and all         )
others similarly situated under 29 U.S.C.  )
216(b),                             )
                                    )          CIVIL ACTION NO.
            Plaintiff,              )
                                    )          3:10-CV-2436-G
VS.                                 )
                                    )
DETAIL SOLUTIONS, LLC               )
f/k/a UPTOWN DETAIL AND SPA and     )
CAROLE AUSTEIN, INDEPENDENT         )
EXECUTRIX OF THE ESTATE OF          )
CHARLES AUSTEIN,                    )
                                    )
            Defendants.             )

## MEMORANDUM OPINION AND ORDER

Before the court are the following motions:  (1) the defendant Detail Solutions'

motion for summary judgment ("Detail Motion") (docket entry 74); (2) the

plaintiff's objection and motion to strike portions of defendant Detail Solutions'

reply brief in support of motion for summary judgment ("Plaintiff's Motion to

Strike") (docket entry 86); (3) the executrix's objection to plaintiff's motion for

summary judgment and brief in support ("Executrix's Motion to Strike") (docket

entry 92); and (4) the plaintiff's motion for partial summary judgment ("Mendoza

Motion") (docket entry 87).  For the reasons stated below, the Detail Motion is

granted, the Plaintiff's Motion to Strike is granted, the Executrix's Motion to Strike is

granted, and the Mendoza Motion is stricken in part and denied in part.

## I. BACKGROUND

### A. Factual Background

This is a dispute over alleged violations of the Fair Labor Standards Act

("FLSA"), including failure to pay minimum wage, unpaid overtime wages, and

retaliation.  *See* Complaint Under 29 U.S.C. 201-216 ("Complaint") ¶¶ 13-21

(docket entry 1).  The plaintiff, Esau Torres Mendoza ("Mendoza"), was employed

by the defendant, Detail Solutions, LLC ("Detail Solutions"), at least from April

2010 through November 2010.[1]  *See* Defendant Detail Solutions' Brief in Support of

Motion for Summary Judgment ("Detail Brief") at 3 ¶ 6 (docket entry 75).  Detail

Solutions provides car washing and detailing services to local automobile dealership

clients, operating one office in Dallas, Texas.  *See* Detail Brief at 2 ¶¶ 1-2.  During the

relevant time period, Detail Solutions was owned and operated by Charles Austein.

*See* Brief in Support of Plaintiff's Motion for Partial Summary Judgment ("Mendoza

---

[1]     The parties dispute the length of Mendoza's employment, with
Mendoza claiming he worked for Detail Solutions as early as October of 2009, *see*
Complaint ¶ 10, and Detail Solutions only admitting it employed Mendoza from
April 2010 through November 2010.  *See* Detail Brief at 3 ¶ 6.  For reasons that will
become clear, the court need not resolve this factual dispute for the purpose of
deciding the motion.

Brief") at 4 (docket entry 88); *see also* Plaintiff's Appendix to Brief in Support of

Plaintiff's Motion for Partial Summary Judgment ("Mendoza Appendix 2") at 6-8

(docket entry 89). All of Detail Solutions' customers and suppliers are located in the

state of Texas, and it contends that it has never conducted work outside of Texas. *See*

Detail Brief at 2. It does not order goods or materials from out of state, nor does it

communicate with customers or suppliers across state lines. *Id.* It asserts that it has

never advertised or secured financing outside of Texas. *Id.* In 2009, it generated

$498,602.46 in annual sales. *Id.*

Mendoza's duties with Detail Solutions included washing and detailing cars at

certain automobile dealerships in the Dallas area. *Id.* at 3. He did not apparently

interact with customers or use the telephone or computer as part of his

responsibilities. *Id.* Mendoza also apparently never worked outside of the state for

Detail Solutions and only worked for its Dallas-based customers. *Id.* Mendoza is an

undocumented worker who does not possess a social security card, a U.S. citizenship

card, or a U.S. or foreign passport. *Id.*; *see also* Appendix in Support of Defendant

Detail Solutions' Motion for Summary Judgment ("Detail Appendix") at 8-9, 14

(docket entry 76). Mendoza avers that for the duration of his employment, he

worked an average of 66 hours per week and was paid at the same $5.38 hourly rate

for all hours worked. *See* Complaint ¶¶ 13, 16. In addition, he alleges that, in

November 2010, within two weeks of lodging a complaint with his supervisor about

not being paid overtime wages, he was fired.  *Id*. ¶¶ 18-19.  He maintains that his complaint to his supervisor about unpaid overtime wages was the motivating factor in his firing.  *Id*. ¶ 20.

## B.  Procedural Background

Mendoza filed a complaint against Detail Solutions and Charles Austein on December 1, 2010.  *See generally* Complaint.  After Mr. Austein passed away, the plaintiff's motion to substitute the executrix of Mr. Austein's estate, Carole Austein ("Austein"), as a defendant was granted.  *See* Order of April 20, 2012 (docket entry 71).  Detail Solutions filed an answer on January 12, 2011.  *See* Defendants' Original Answer ("Answer") (docket entry 8).  On June 20, 2012 Detail Solutions moved for summary judgment on the issue of the FLSA's coverage of Detail Solutions.[2]  *See* Detail Motion at 4-7.  It also moved for summary judgment on Mendoza's retaliation claim, to the extent this claim is used to support the requested relief of back pay damages.  *Id*. at 7-9.  Mendoza responded to the motion on July 10, 2012.  *See* Brief in Support of Plaintiff's Response to Defendant Detail Solutions, LLC's Motion for Summary Judgment ("Mendoza Response") (docket entry 80).  Detail Solutions filed a reply on July 30, 2012.  *See* Defendant Detail Solutions' Reply Brief in Support of Motion for Summary Judgment ("Detail Reply") (docket entry 85).  Mendoza

---

[2]     Mendoza notes, and the court agrees, that it would have been more appropriate for Detail Solutions to style its motion as one for partial summary judgment.  *See* Brief in Support of Plaintiff's Response to Defendant Detail Solutions, LLC's Motion for Summary Judgment ¶ 4 (docket entry 80).

objected and moved to strike portions of this reply on August 13, 2012.  *See*

Plaintiff's Objection and Motion to Strike Portions of Defendant Detail Solutions'

Reply Brief in Support of Motion for Summary Judgment ("Plaintiff's Motion to

Strike") (docket entry 86).  On August 31, 2012, Mendoza moved for partial

summary judgment on the issues of FLSA coverage, Charles Austein's status as an

employer under the FLSA, and the availability of back pay damages to Mendoza.  *See*

Mendoza Motion.  Detail Solutions responded to this motion on September 21,

2012.  *See* Defendant Detail Solutions' Response to Plaintiff's Motion for Partial

Summary Judgment ("Detail Response") (docket entry 90).  Austein filed an

objection to Mendoza's partial summary judgment motion on September 21, 2012.

*See* Executrix's Motion to Strike.  This case is set for trial on the court's four-week

docket beginning January 7, 2013.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions,

disclosure materials on file, and affidavits, if any, "show[] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a), (c)(1).[3]  A fact is material if the governing substantive

---

[3]     Disposition of a case through summary judgment "reinforces the
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of
actions, and, when appropriate, affords a merciful end to litigation that would

(continued...)

law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor.  *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact.  See *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record

---

³(...continued)
otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

that establishes the existence of genuine issues as to the material facts.  *Celotex*

*Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  "When evidence exists in the

summary judgment record but the nonmovant fails even to refer to it in the response

to the motion for summary judgment, that evidence is not properly before the district

court."  *Malacara*, 353 F.3d at 405.

### B.  FLSA:  Covered Employers

#### 1.  *Legal Standard*

The FLSA mandates that covered employers pay wages of at least $7.25 an

hour to their employees.  29 U.S.C. § 206(a)(1)(C).  It also mandates that covered

employers not utilize employees "for a workweek longer than forty hours unless such

employee receives compensation for his employment in excess of the hours above

specified at a rate not less than one and one-half times the regular rate at which he is

employed."  29 U.S.C. § 207(a)(1).

Consistent with Congress's power to regulate interstate commerce, these

provisions only apply (1) to an employer that has "employees who in any workweek

[are] engaged in commerce or in the production of goods for commerce" ("individual

coverage"), or (2) to an employer that has employees "employed in an enterprise

engaged in commerce or in the production of goods for commerce" ("enterprise

coverage").  *See* 29 U.S.C. § 206(a)(1) and 29 U.S.C. § 207(a)(1); for the terms

"individual coverage" and "enterprise coverage," see, *e.g.*, *Martin v. Bedell*, 955 F.2d

1029, 1032 (5th Cir.), *cert. denied*, 506 U.S. 915 (1992).  "Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  On "production of goods," the statute provides the following definition:  "[A]n employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."  29 U.S.C. § 203(j).

To establish that his employer is subject to the requirements of the FLSA, the plaintiff employee has the burden to show that there is coverage, whether individual or enterprise.  See, *e.g.*, *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 120 (1946).

a.  "Individual coverage"

The phrase "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" is not statutorily defined.  Courts in the Fifth Circuit have interpreted the "engaged in commerce" language in 29 U.S.C. §§ 206(a)(1) and 207(a)(1) by applying a "practical test," which looks to whether an employee's work "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity."  See *Sobrinio v. Medical Center Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007), quoting *Mitchell v. H.B. Zachary Company*,

- 8 -

362 U.S. 310, 324 (1960).  The Supreme Court has also explained that the test is

whether "the employee's activities . . . are actually in or so closely related to the

movement of the commerce as to be a part of it." *McLeod v. Threlkeld*, 319 U.S. 491,

497 (1943).  It is settled that Congress did not regulate to the full extent of its power

under the Commerce Clause when it enacted the FLSA.  See *Wirtz v. Wohl Shoe

Company*, 382 F.2d 848, 850 (5th Cir. 1967) ("it is now settled that in enacting the

FLSA Congress did not exercise the full scope of its authority to regulate the working

conditions of employees whose activities merely affect commerce").  It is therefore

not sufficient, for purposes of the "engaged in commerce" clause of the individual

coverage provision, that an employee's work merely "affects" interstate commerce in

some way.  *Id.*

### b.  "Enterprise coverage"

Congress did define the phrase "enterprise engaged in commerce or in the

production of goods for commerce."  Such an enterprise is one that "(i) has

employees engaged in commerce or in the production of goods for commerce, or that

has employees handling, selling, or otherwise working on goods or materials that have

been moved in or produced for commerce by any person; and (ii) is an enterprise

whose annual gross volume of sales made or business done is not less than $500,000

(exclusive of excise taxes at the retail level that are separately stated)."  29 U.S.C.

§ 203(s)(1)(A).  "Goods" are defined in the statute as "goods (including ships and

- 9 -

marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i).

The first prong of the enterprise coverage definition can be met in one of two ways, either via the "engaged in commerce" clause or via the "handling" clause. Given the identical language, the "engaged in commerce" clause can be analyzed in essentially the same manner as individual coverage is analyzed.[4] The "handling" clause, however, requires separate analysis.

### 2.  *Application*

### a.  Individual coverage

With respect to individual coverage, Mendoza argues only that he was "engaged in commerce," not that he was "engaged in the production of goods for commerce."  *See* Mendoza Response at 6-7.  Mendoza asserts that he was "involved in the preparation and detailing of new cars, that had moved through interstate commerce for dealerships so that they could sell them to first time buyers in Texas." *Id*. at 6.  Because such preparation is "an integral part of the sale of new vehicles,"

---

[4]      The difference is that in the individual coverage analysis, the question is whether the plaintiff himself engaged in interstate commerce, whereas in the enterprise coverage analysis, the question is whether any two or more of the business's other employees engaged in interstate commerce.

Mendoza argues that he was "actually in or so closely related to the movement of the commerce as to be a part of it." *Id.*

Mendoza misconstrues the "engaged in commerce" prong of the FLSA's individual coverage provision.  To be engaged in commerce, it is not enough for an employee's work to be "integral" to interstate commerce.  "[T]he test of whether one is in commerce is obviously more exacting than the test of whether [an] occupation is necessary to production for commerce."  *Armour & Company v. Wantock*, 323 U.S. 126, 131 (1944).  This "exacting" test requires the court to consider whether the work that Mendoza himself performed is, "in practical effect, a part of" either "commerce" or the "functioning of an instrumentality or facility of interstate commerce."  See *McLeod*, 319 U.S. at 497; and *Sobrinio*, 474 F.3d at 829.  In answering this question, courts routinely look to whether the employee's work engages him in the "actual movement of persons or things."[5]  See, *e.g.*, *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).  Here, the mere

---

[5]       Though this language is drawn from an Eleventh Circuit case, *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006), the analysis of courts outside the Eleventh Circuit in close "engaged in commerce" cases makes clear that actual movement of persons or things is an important part of a finding that an employee is "engaged in commerce."  For example, courts have considered whether an elevator operator who transports postal workers and freight delivery employees is enough involved in the movement of commerce to be part of the flow of commerce.  See, *e.g.*, *Brennan v. The Wilson Building, Inc.*, 478 F.2d 1090, 1092 (5th Cir.), *cert. denied*, 414 U.S. 855 (1973).  Here, Mendoza's car-washing activity has nothing to do with the actual movement of the cars in commerce, nor is this activity even connected to such movement in any significant way.

washing of cars that have once moved in commerce[6] is not closely related to the movement of those cars in commerce and cannot be considered, in practical effect, part of the "functioning of an instrumentality or facility of interstate commerce."  See *Sobrinio*, 474 F.3d at 829.

Mendoza's lack of other employment duties only bolsters this conclusion. Detail Solutions points out, and Mendoza does not dispute, that he did not utilize any instrumentalities of interstate commerce in the performance of his job.  Detail Brief at 3.  His car-washing activities did not require use of computers, telephones, or other such instrumentalities of interstate commerce.  *Id*.  Mendoza was thus not "engaged in commerce," and the court concludes that there is no individual coverage of Mendoza under the FLSA.

### b.  Enterprise coverage

### i.  "Engaged in commerce" clause

Mendoza never argues that Detail Solutions had employees who were "engaged in commerce" or in "the production of goods for commerce."  The court thus need not analyze this clause of the enterprise coverage provision.

---

[6]     The court will assume for the moment that the cars Mendoza washed had previously moved in commerce.  A fuller discussion of this issue can be found below.

ii. "Handling" clause

Mendoza does not specifically identify the "handling clause" as the basis of his enterprise coverage argument, but the court construes his summary judgment response as making such an argument. *See* Mendoza Response at 7 ¶ 21. Mendoza urges that "[t]he evidence also establishes that two or more of [Detail Solutions'] employees regularly and recurrently handled or worked on new automobiles made outside the state of Texas." *Id.* Detail Solutions disputes the sufficiency of the evidence Mendoza uses to establish that the cars Detail's employees washed had moved in interstate commerce. *See* Detail Reply at 2. Mendoza asserts by affidavit that the cars he washed (which include Audi, Nissan, Volvo, Toyota, GMC, and Suzuki) were manufactured out of state. *See* Plaintiff's Appendix to Brief in Support of Plaintiff's Response to Defendant Detail Solutions' Motion for Summary Judgment ("Mendoza Appendix 1") at 9 ¶ 4 (docket entry 81).

Mendoza, however, is not shown to have personal knowledge about where these cars were manufactured and so his statement cannot meet the requirements of FED. R. CIV. P. 56(c)(4). Mendoza also includes in the appendix to his response printouts from Internet sites purporting to show that the types of cars he washed are manufactured in states other than Texas. See *id.* at 12-21. Detail Solutions correctly argues that these Internet pages do not meet the authentication requirement of Federal Rule of Evidence 901. *See* Detail Reply at 2.

In addition, Mendoza has submitted no evidence about the makes of car that other employees at Detail Solutions washed in the course of their employment. This is fatal to Mendoza's enterprise coverage argument, because enterprise coverage requires the court to find that an employer had multiple employees "handling, selling, or otherwise working on" goods that have moved in interstate commerce. *See* 29 U.S.C. § 203(s)(1)(A)(i). The court thus concludes that the plaintiff has not brought forward evidence sufficient to show that Detail Solutions "has employees . . . working on goods . . . that have been moved in . . . commerce."

Mendoza argues further that he and other employees were required to wear uniforms on the job and that these uniforms contained labels that stated they were made in Honduras. *See* Mendoza Response at 7 ¶ 21. Mendoza is apparently arguing that wearing such a uniform means that he and Detail's other employees were "handling materials"[7] that had moved in interstate commerce. The term "materials" is not defined in the FLSA, and there is no opinion in the Fifth Circuit construing it. The Eleventh Circuit, however, has carefully analyzed the term in an opinion the court finds persuasive. See *Polycarpe v. E & S Landscaping Service, Inc.*, 616 F.3d 1217,

---

[7]     If Mendoza's argument is that uniforms are "goods" for purposes of the handling clause of the enterprise coverage provision, then it fails. The statute's definition of goods specifically excludes goods "after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i). Detail Solutions is the ultimate consumer of the uniforms (and is not a producer, manufacturer, or processor of them); therefore, the uniforms cannot be considered "goods" for purposes of the handling clause.

1221-1226 (11th Cir. 2010). It holds that "materials" include "tools or other articles necessary for doing or making something" and that these tools and other articles "must have a significant connection with the employer's commercial activity." See *Polycarpe*, 616 F.3d at 1226.

Under this definition, it is clear that uniforms do not qualify. They are not necessary for doing or making anything and they do not have a significant connection to the activity of washing cars. They may be important to the business in identifying or advertising itself. But their lack of connection to the actual commercial activities of Detail Solutions' enterprise means they cannot be considered "materials" for purposes of enterprise coverage.

Given the failure of both his individual coverage and his enterprise coverage arguments, Mendoza has not sustained his burden of showing that the FLSA applies to Detail Solutions. Detail Solutions' motion for summary judgment is therefore granted on Mendoza's FLSA minimum wage and overtime claims.

## C. FLSA: Retaliation claim

As an initial matter, there is a question whether the FLSA's retaliation provisions can apply to an employer who is not otherwise covered by the act under its individual coverage or enterprise coverage provisions. The Fifth Circuit has answered this question in the affirmative. See *Wirtz v. Ross Packaging Company*, 367 F.2d 549, 550-551 (5th Cir. 1966). The court must therefore analyze whether or not the back

pay damages Mendoza seeks as a remedy for Detail Solutions' alleged retaliation are available in this case.

Detail Solutions argues that Mendoza's status as an undocumented worker precludes awarding him back pay damages, under *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137 (2002). *Hoffman* explained that an award of back pay damages to a worker whose immigration status placed him in violation of Immigration Reform and Control Act of 1986 ("IRCA") "runs counter to policies underlying the IRCA" and would condone prior violations of the immigration laws and encourage future violations. See *Hoffman*, 535 U.S. at 149-50.

As an initial matter, the court notes that the admissions to which Detail Solutions points in its brief establish that Mendoza would have been in violation of 8 U.S.C. § 1324a(b), which requires possession of documents establishing employment authorization, at the time of his employment and discharge from Detail Solutions. *See* Detail Appendix at 8-9, 14. Not only so, but Mendoza never disputes Detail Solutions' claims that Mendoza provided it a false social security number that did not belong to him. The question then becomes whether the logic of *Hoffman*, a case that arose under the National Labor Relations Act ("NLRA"), applies equally to awards of back pay to undocumented workers under other federal labor statutes.

The Fifth Circuit has distinguished awards of back pay to undocumented workers under the NLRA from awards of workers compensation to undocumented

- 16 -

workers under the Longshore and Harbor Workers' Compensation Act ("LHWCA").
See generally *Bollinger Shipyards, Inc. v. Director, Office of Worker's Compensation
Programs*, 604 F.3d 864 (5th Cir. 2010). The *Bollinger* court concluded that *Hoffman*
did not apply to the LHWCA because (1) "workers' compensation under the
LHWCA is a non-discretionary, statutory remedy," (2) "the LHWCA is a substitute
for tort law, abrogating fault of either the employer or the employee," and
(3) "Congress chose to include a provision in the LHWCA expressly authorizing the
award of benefits 'in the same amount' to nonresident aliens." See *Bollinger* 604 F.3d
at 877-879.

Here, none of the three factors the Fifth Circuit in *Bollinger* used to distinguish
the LHWCA from the NLRA is present. Back pay is a discretionary remedy under
the FLSA. 29 U.S.C. § 216 mandates that a violator of section 215(a)(3) (the
retaliation provision) "shall be liable for such legal or equitable relief as may be
appropriate to effectuate the purposes of section 215(a)(3) of this title, including
without limitation employment, reinstatement, promotion, and the payment of wages
lost and an additional amount as liquidated damages." Thus, unlike the LHWCA, a
violation of the FLSA is not solely remedied by compensation for wages lost. If the
court does not consider it "appropriate to effectuate the purposes of section
215(a)(3)" by an award of back pay that would simultaneously frustrate the purpose
of the IRCA, the court has discretion not to award any back pay. Second, the FLSA

does not function as a substitute for tort law in a limited employment context, as the

LHWCA does.  Finally, the FLSA does not contain any express provisions authorizing

the award of benefits in equal amounts to nonresident aliens, as the LHWCA does.

The court has identified no other relevant factors that would distinguish the

FLSA from the NLRA so as to make *Hoffman* inapplicable.  Since Mendoza has

essentially admitted his undocumented status (which placed him in violation of the

IRCA at the time of his employment), and since *Hoffman*, absent special factors,

prohibits awards of back pay to undocumented workers under federal labor statutes,

the court agrees with Detail Solutions that Mendoza cannot be permitted to recover

back pay damages for employment time lost due to any alleged retaliation motivating

his firing.

D.  Mendoza's Motion to Strike Portions of Detail Solutions' Reply

Mendoza argues in his motion to strike that, since Detail Solutions did not in

its initial motion request summary judgment on elements of damages other than back

pay that may have resulted from the alleged retaliation (including emotional distress,

humiliation, and pain and suffering), those issues are not properly before the court.

*See* Mendoza Motion to Strike at 2 ¶¶ 2-4.  The court agrees, and it will defer

consideration of whether any of these elements of damages may have resulted from

the alleged retaliation and of whether such damages are available to Mendoza in spite

of *Hoffman*.  Mendoza's motion to strike any portions of Detail Solutions' reply brief that request summary judgment on such elements of damages is therefore granted.

  E. <u>Austein's Objection to Mendoza's Partial Summary Judgment Motion</u>

   Austein objects that Mendoza's motion for partial summary judgment is, in effect, a sur-reply filed without leave of the court, in that it largely copies Mendoza's summary judgment response and attempts to raise again issues that were fully briefed and argued in the context of Detail Solutions' summary judgment motion.  *See* Executrix's Motion to Strike at 1-2.  The court construes this objection as a motion to strike portions of Mendoza's partial summary judgment motion.  The court agrees with Austein that the sections of Mendoza's motion that address the issues of FLSA coverage and back pay damages, *see* Mendoza Brief at 5-6, 8-10, are repetitious, largely unnecessary, and function in essence as a sur-reply filed improperly without leave of the court.  However, Mendoza does raise one new issue in his motion for partial summary judgment, the issue of Charles Austein's status under the FLSA as an employer and his potential liability (and, by extension, his estate's potential liability).  *See* Mendoza Brief at 6-7.  The court thus strikes Mendoza's partial summary judgment motion to the extent it rehashes the issues of FLSA coverage and back pay damages.  To the extent Mendoza's motion raises the new issue of Mr. Austein's status and his estate's potential liability, the court will consider the motion.

F.  Charles Austein's Employer Status and His Estate's Potential Liability

Mendoza argues that Charles Austein must be considered an "employer" for FLSA purposes, because he was the owner and President of Detail Solutions in the relevant time period and because he had primary responsibility for the company's financial decisions.  *See* Mendoza Brief at 7.  Neither Detail Solutions (in its response) nor Austein (in her objection) addresses this aspect of Mendoza's summary judgment motion.

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The Fifth Circuit has explained that the question whether a person is an employer is a question of fact and that "the total employment situation should be considered."  See *Wirtz v. Lone Star Steel Company*, 405 F.2d 668, 669 (5th Cir. 1968).  The test is one of "economic reality," rather than "technical concepts."  See *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961); *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012).  Key factors under this test of economic reality include whether an alleged employer:  "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010), citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990).

Mendoza contends the following facts contribute to a finding that Mr. Austein was an "employer" of Mendoza and other Detail employees: (1) Mr. Austein was an owner during the relevant time period; (2) he was the President of Detail Solutions with control over day to day operations; (3) he was the person most responsible for the company's financial decisions. *See* Mendoza Brief at 4, 7. These facts, while perhaps relevant to the issue of Austein's employer status, are not enough to enable this court to conclude that he was an "employer" for purposes of the FLSA. While it is true that "operational control" is a key consideration, see *Gray*, 673 F.3d at 355, Mendoza's bare assertion that Mr. Austein exercised operational control over Detail Solutions is neither dispositive nor persuasive in the absence of specific facts indicating such control. The court denies Mendoza's summary judgment motion on the issue of whether Charles Austein was an "employer" of Mendoza for purposes of the FLSA.

## III.  CONCLUSION

For the reasons stated above, Detail Solutions' motion for summary judgment is **GRANTED**. Since Mendoza has not shown that the FLSA applies to Detail Solutions, summary judgment is **GRANTED** to Detail Solutions on Mendoza's claims of violations of the minimum wage and overtime provisions of the FLSA. Summary judgment is also **GRANTED** to Detail Solutions on Mendoza's claim for back pay for violations of the FLSA's retaliation provisions. Mendoza's motion to

strike portions of Detail Solutions' reply brief is **GRANTED**.  Austein's objection, which the court construes as a motion to strike portions of Mendoza's motion for partial summary judgment, is **GRANTED**.  Mendoza's motion for partial summary judgment is **STRICKEN** in part and **DENIED** in part.  It is stricken to the extent it discusses the issues of FLSA coverage and back pay damages.  It is denied on the issue of the "employer" status of Charles Austein under the FLSA.

     **SO ORDERED**.

November 27, 2012.

_A. Joe Fish_
**A. JOE FISH**
**Senior United States District Judge**

- 22 -